**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Withey,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Astrue, Commissioner, Social Security Administration,<br><br>    Defendant. | No. CV-10-1972-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Robert Withey, which challenges the Social Security Administration's denial of benefits. (Doc. 13). For the reasons set forth below, the Court affirms that decision.

**BACKGROUND**

At the time of the amended alleged disability onset date, Plaintiff was a 49-year old male with a high school education who had previously worked as a dump truck driver. On September 20, 2007, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of July 24, 2004. (R. at 121). Plaintiff claimed to be disabled due to hepatitis C and the residual effects of treatment. Plaintiff's claim was denied both initially on February 1, 2008, and upon reconsideration on May 7, 2008. (R. at 59–66; R. at 71–77). Plaintiff then appealed to an Administrative Law Judge ("ALJ") (R. at 58), and amended his claim to allege a closed period of disability commencing

on December 31, 2006 and ending October 7, 2008, (R. at 48). The ALJ conducted a hearing on the matter on May 6, 2009. (R. at 11–29). On September 18, 2009, the ALJ issued a decision, finding Plaintiff not disabled. (R. at 48–57).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (*Id.*). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 50). At step two, the ALJ determined that Plaintiff suffered from the severe impairment of hepatitis C. (*Id.*). The ALJ also determined that he had no medically determinable mental impairment of anxiety disorder. (*Id.* at 50–51). At step three, the ALJ determined that Plaintiff's impairment does not meet or equal any of the Social Security Administration's listed impairments. (*Id.* at 51). Specifically, the ALJ noted that "the medical evidence of record does not document the existence of any alternative findings required by subsections A–G of section 5.05 of the listed impairment of chronic liver disease." (*Id.*).

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if he proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff could perform "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (*Id*. at 52). Specifically, the ALJ found that the claimant "can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, stand for up to 6 hours out of an 8 hour work day, and sit for up to 6 hours out of an 8 hour work day, but has postural limitations that preclude more than occasional climbing of ramps/stairs, crouching or crawling and may never climb ladders/ropes/scaffolds." (*Id*.). It was further determined that claimant "must avoid concentrated exposure to vibration, extreme cold and heat, and avoid even moderate exposure to hazards." (*Id*.). The ALJ thus determined at step four that Plaintiff did not retain the RFC to perform his past relevant work as a dump truck driver, which was semi-skilled and heavy in exertional level (R. at 56). The ALJ therefore reached step five, determining that Plaintiff could perform a significant number of other jobs in the national economy that met his RFC limitations. (R. at 56–57). Given this analysis, the ALJ concluded that Plaintiff was not under a disability from December 31, 2006 through October 7, 2008. (*Id.* at 57).

The Appeals Council declined to review the decision, making the ALJ's decision final for purposes of judicial review under 42 U.S.C. § 405(g). (R. at 1–3); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council). Plaintiff filed the complaint underlying this action on September 14, 2010, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1).[3]

**DISCUSSION**

---

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

## I. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II. Analysis

Plaintiff argues that the ALJ erred by: (A) rejecting claimant's credibility contrary to law (Doc. 13 at 7–8), and (B) discussing changed circumstances pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), (*Id.* at 5–7).

### A. ALJ's Determination of Claimant's Credibility

Claimant asserts that he was unable to perform any work during the alleged closed period of disability due to abdominal pain and fatigue in addition to side effects from Interferon treatments for hepatitis C, including anxiety, insomnia and flu-like symptoms. Claimant contends that because fatigue and side effects to hepatitis C treatment are subjective in nature, the ALJ erred by not accepting that his symptoms were debilitating. He asserts that because the ALJ did not discuss claimant's credibility, with the exception of his credibility as to cessation of drug use, she "implicitly denied the credibility of the claimant as she did not grant his case." (Doc. 13 at 7). In particular, claimant argues that the ALJ erred by failing to find that Mr. Withey met the test from *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step analysis: "the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[4] In *Cotton*, the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407; *see also Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *See Smolen*, 80 F.3d at 1284. Nor must the claimant

---

[4] The *Cotton* analysis is a threshold test that the Ninth Circuit set forth in *Cotton*, 799 F.2d at 1403, and reaffirmed in *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc). *See Smolen*, 80 F.3d at 1281 (citing *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1994); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. *Id.*; *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). There is no dispute that Plaintiff's impairment could reasonably produce the alleged symptoms (R. at 52); therefore, the first step was properly satisfied.

Despite that finding, the ALJ was not required to accept Plaintiff's testimony regarding the severity of his symptoms. Once the claimant meets the *Cotton* test and there is no affirmative evidence of malingering, the ALJ may reject the claimant's credibility regarding the severity of his symptoms only if the ALJ provides specific, clear and convincing reasons for so doing. *Vasquez*, 572 F.3d at 591; *see also Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1999); *Bunnell*, 947 F.2d at 345. Indeed, the ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345–46). Nevertheless, if the ALJ's "credibility finding is supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing." *Id.* at 958–59. Here, the ALJ specifically found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credited to the extent they are inconsistent with the [ ] residual functional capacity assessment [for light work]." (R. at 52).

When evaluating the intensity and persistence of a claimant's symptoms, the ALJ may consider a broad range of factors in addition to the claimant's own statements regarding the limitations caused by his symptoms. These factors include Plaintiff's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Thomas*, 278 F.3d at 958–59 (citing *Light*, 119 F.3d at 792). The ALJ meets this standard by

providing a "narrative discussion" containing "specific reasons for [his] finding" that are "supported by the evidence in the case record." *Robbins*, 466 F.3d at 884 (quoting S.S.R. 96-7p (July 2, 1996)). The ALJ satisfied this standard in the present case.

As a preliminary matter, the ALJ considered Mr. Withey's contemporaneous treatment notes. In particular, the ALJ considered that in November 2007 claimant described to his treating physician that his anxiety was mild. (R. at 53, 448) ("The patient is reporting tolerable mild anxiety at this time."). Additionally, the ALJ found that claimant only sought treatment for his abdominal pain until April 2007 when he had surgery to remove his gallbladder, which alleviated many of the abdominal symptoms. (R. at 217–240, 241–52).[5] She further relied on Dr. Kalfus' August 2007 report, which found that 75% of Mr. Withey's upper GI symptoms were relieved as of that date. (R. at 286–87). Plaintiff objects to the ALJ's finding that "[c]ontemporaneous treatment notes do not document such a level of debilitating symptoms that the claimant described at the hearing" (R. at 55), because "the treating physician's chart note after the first interferon injection indicates the claimant having 'prominent flu-like symptoms.'" (Doc. 13 at 6 (citing R. at 288)). However, the treating physician's note, the only part of the record to which Plaintiff cites, indicates that while Mr. Withey "reports prominent flu-like symptoms status post first injection" his physical exam was unremarkable. (R. at 288). Therefore, Plaintiff's reliance on the note to conclude that the ALJ erred in finding that the treatment notes do not document the level of debilitating symptoms that Plaintiff described at the hearing is not, by itself, persuasive.

Morever, the ALJ found that the claimant's testimony regarding his cessation of illegal drug use to be "less than credible." (R. at 53). To support this determination, the ALJ specifically noted that although claimant had testified to stopping use of heroin and methamphetamines before 2007, in April 2007 he nevertheless admitted to his treating gastroenterologist, Dr. Mumtaz, that he had used methamphetamines one week prior. (R. at

---

[5] Plaintiff misconstrues the ALJ's finding that Plaintiff "only sought treatment for pain until April 2007" to mean "claimant did *not* seek treatment for abdominal pain until April of 2007." (Doc. 13 at 6; R. at 53).

- 7 -

237). Claimant also testified that he had stopped using marijuana before he was married in 2007 because he had to wait to start Interferon treatment until his system was free of other substances; however, the medical evidence indicated that he continued marijuana use on an ongoing basis during the treatment. (R. at 353–355). These findings go to Plaintiff's reputation for truthfulness.

While the ALJ cannot reject claimant's pain testimony on the sole ground that it is not corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1529(c)(2). To this end, the ALJ considered the following objective medical evidence: (1) a March 2007 negative CT scan of the abdomen and normal liver function tests, (2) an abdominal ultrasound indicating a moderately enlarged liver but not significantly abnormal in consistency, (3) a May 2007 CT scan showing no evidence of intraabdominal pathologic process, and (4) a July 2007 liver biopsy indicating hepatic parenchyma with a preserved architecture without cirrhosis and no significant fibrosis. (R. at 54). Based on the foregoing, the ALJ concluded that the objective medical evidence was inconsistent with the disabling level of pain, fatigue, and anxiety which claimant described in his testimony.

The ALJ further considered the Consultative Examination Report submitted by Dr. Douglas Kelly, an orthopedic surgeon. After noting claimant's "previous spinal fusion surgery, right and left knee arthroscopies, history of hepatitis C and anxiety reaction to medication", Dr. Kelly opined that claimant could "lift and carry 30 pounds occasionally and 30 pounds frequently, stand/walk 6 hours out of an 8 hour day, sit 6 hours out of an 8 hour day, climb ladders, ropes and scaffolds occasionally, stoop and kneel frequently and crouch and crawl occasionally." (R. at 54). Plaintiff argues that Dr. Kelly's report was irrelevant because the "primary issue in this case is not the ability to sit for any period of time, or ability to lift any particular amount of weight, or bend, reach, grip, etc., the primary issue is the ability to sustain work eight hours a day, 40 hours a week." (Doc. 17). Claimant argues that the ALJ's consideration of Dr. Kelly's report, based on his exam of claimant's lumbar

problems and their residual impact, demonstrates that the ALJ failed to understand that the claimant's case was based solely upon the effects of hepatitis C and its treatment. He further asserts that Dr. Kelly's opinion was not relevant because the hepatitis C treatment was still ongoing at the time of Dr. Kelly's exam and for several months thereafter. However, at step two of her five-step sequential evaluation, the ALJ determined that Plaintiff suffered from the severe impairment of hepatitis C. (R. at 50). Furthermore, Dr. Kelly's report specifically notes that he took into account claimant's "history of hepatitis C." Apparently, claimant misunderstands that the ALJ must assess claimant's RFC in order to make the disability determination and decisions at steps 4 and 5 of the sequential evaluation process.[6]

The ALJ credited the Consultative Examination Report of Dr. House, a psychologist, who observed that the claimant was not obviously depressed at the time of the evaluation, showed no signs of a thought disorder, and denied having problems with reading and writing. (R. at 54).[7] Dr. House also stated that claimant appeared intellectually capable of making normal financial decisions but that there was potential for misuse of Social Security benefits due to continued illegal drug use. (*Id.*).

Additionally, the ALJ took into account claimant's daily activities, as reported in Ms. Withey's Third Party Function report. Under 20 C.F.R. § 404.1513(e)(2), "observations by nonmedical sources about how impairments affect a claimant's ability to work" will be considered in assessing a disability claim. *See Smolen*, 80 F.3d at 1288. Friends and family

---

[6] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [physical abilities], (c) [mental abilities], and (d) [other abilities affected by impairment] or 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p.

[7] As part of his argument pertaining to misinterpretation of evidence, Plaintiff objects to the ALJ's reliance upon Dr. House's report regarding his mental functioning by noting that his problems were related to hepatitis C. (Doc. 13 at 5–6). However, claimant alleges mental side effects to his hepatitis C treatment, including anxiety, therefore the ALJ did not err by factoring Dr. House's report into his assessment of Plaintiff's residual functional capacity.

"in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." *Dodrill*, 12 F.3d at 918–19. Ms. Withey's report, dated October 2007, provided that the claimant "helps with some household duties, feeds and waters pets, has no problem with personal care, prepares meals 2-3 times per week, does housework, shops once per month, walks, rides in cars and uses public transportation." (R. at 55).

The ability to perform household chores may constitute substantial evidence that the claimant is not disabled by subjective complaints of pain and fatigue. *See Rollins*, 261 F.3d at 857; *see also Morgan*, 169 F.3d at 600 (affirming the ALJ's credibility analysis where the ALJ "determined that [claimant's] ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [his] ability to work"). However, while an ALJ may consider a claimant's daily activities in assessing credibility, "[t]his line of reasoning clearly has its limits [.]" *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferrable to what might be the more grueling environment of the workplace[.]" *Id.* (citations omitted). "[T]o conclude that a claimant's daily activities warrant an adverse credibility determination[,]" "[t]he ALJ must make specific findings relating to [the daily] activities *and* their transferability [.]" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citation and internal quotation marks omitted) (emphasis added). Because the ALJ provided no transferability analysis, Plaintiff's daily activities cannot serve as sufficient justification for the adverse credibility finding. Nevertheless, not all errors made in evaluating subjective complaint testimony undermine the ALJ's determination. *See Batson*, 359 F.3d at 1196–97 (explaining that an ALJ's error is harmless if it does not affect his ultimate conclusion and holding that a single error in a credibility determination was harmless because the ALJ gave numerous reasons for finding the claimant not credible that were supported by substantial evidence); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) ("[T]he ALJ's error . . . does not negate the validity of the ALJ's adverse credibility finding. . . . [T]he remaining

- 10 -

valid reasons supporting the ALJ's determination are not relatively minor.") (internal citations and quotations omitted). Because the ALJ did not solely rely on claimant's daily activities as reported by Ms. Withey, but rather considered several other specific and convincing reasons, the error was harmless.

The ALJ's determination regarding the intensity, persistence, and limiting effects of Mr. Withey's symptoms was thus based on an overall assessment of several factors collectively. *See Thomas*, 278 F.3d at 958–59 (noting ALJ may consider several different factors when weighing claimant's credibility). Because the ALJ provided specific, clear, and convincing reasons for discounting Mr. Withey's testimony regarding the severity of his symptoms, including consideration of contemporaneous treatment notes, objective medical evidence and reports, and Mr. Withey's reputation for truthfulness with respect to cessation of illegal drug use, there was no error in the ALJ's credibility determination. The ALJ's interpretation is reasonable and supported by substantial evidence; thus, the Court may not engage in second-guessing. *See Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).

### B. Relevance of Chavez

To the extent that Plaintiff's arguments concerning the ALJ's interpretation of evidence fell within the framework of the ALJ's credibility determination, those have been discussed above. *See discussion supra* section I. In addition, however, Plaintiff contends that the ALJ's discussion of changed circumstances pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), is not relevant because hepatitis C was not at issue in Plaintiff's previous award of benefits for a closed period of disability, which related to lumbar back problems. In *Chavez*, the Ninth Circuit stated that "the principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Id*. at 693. Additionally, the Ninth Circuit has held that, "in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, [a claimant] must prove 'changed circumstances' indicating greater disability." *Id*. (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). An ALJ may not, however, "apply res judicata where the claimant raises a new issue,

such as the existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827 (citing *Gregory v. Bowen*, 844 F.2d 664 (9th Cir. 1988)). Moreover, the principles of res judicata announced in *Chavez* do not create a rebuttable presumption of disability where there is a prior finding of disability. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

In a prior decision, dated July 23, 2004, the claimant was awarded benefits for a closed period of disability commencing on October 3, 2001 and ending March 5, 2004 as a result of lumbar problems. In that decision, the ALJ found that beginning March 5, 2004, the claimant had the residual functional capacity for light work. The ALJ's prior finding that Mr. Withey could work beginning March 5, 2004, created a presumption that claimant continued to be able to work after that date. *See Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985).

In the present case, the ALJ properly concluded that because the claimant has alleged the existence of impairments not previously considered in the prior claim, the presumption of continuing nondisability has been effectively rebutted. (R. at 53). In *Chavez*, the Ninth Circuit further noted that the findings by a previous ALJ concerning "residual functional capacity, education and work experience are entitled to some res judicata consideration in subsequent proceedings." 844 F.2d at 964. The Court indicated that "[p]rinciples of res judicata made binding the first judge's determinations that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled." *Id*. There would be good cause for the ALJ to reopen determination on claimant's residual functional capacity if "new and material evidence" was furnished. *See* 20 C.F.R. §§ 404.988(b), 404.989(a)(1). In other words, the ALJ had to consider whether the new evidence regarding claimant's hepatitis C is material as it relates to the finding of residual functional capacity for light work. The ALJ deemed the new evidence not material after considering the medical and other evidence of record.

For the reasons already discussed above, the ALJ's determination regarding the severity of claimant's abdominal pain, fatigue and side effects from Interferon treatment, including anxiety, insomnia, fatigue and flu-like symptoms, was supported by substantial

evidence. *See discussion supra* section I. The ALJ then relied on objective medical evidence in the record – including CT scans, ultrasounds, and a liver biopsy – to conclude that it is fully consistent with the prior residual functional capacity determination and inconsistent with disabling levels of pain, fatigue and anxiety. (R. at 54). The ALJ further considered and afforded significant weight to Dr. Kelly's report, which after noting claimant's "previous spinal fusion surgery, right and left knee arthroscopies, history of hepatitis C and anxiety reaction to medication" provided that claimant had a somewhat greater capacity to lift and carry than his previous finding. (R. at 353– 58). Nevertheless, the ALJ found that Dr. Kelly's opinion was not materially different from his previous finding of a residual functional capacity for light work. (R. at 54). The ALJ also relied on Dr. House's report, which indicated that claimant's mental impairments did not limit his ability to perform work-related activities (R. at 345–50), thereby leading to the conclusion that Dr. House's report did not contain material evidence relating to the prior finding of residual functional capacity for light work, (R. at 54).

The ALJ's decision also indicates that she considered the treating physicians' medical evidence of record, including that of Drs. Mumtaz, Wolfson, and McClean. Other than Dr. McClean's opinion recommending light duty work restrictions, the ALJ noted that the other physicians did not opine on claimant's work-related activities. (R. at 55). Ms. Withey's Third Party Function Report was also considered. While the report indicated "some physical and mental limitations as of October 2007" (*id.*), the ALJ did not find them sufficiently material as to alter the RFC finding. Finally, the ALJ afforded significant weight to the January 2008 physical assessment submitted by the State agency medical consultant, who based on his review of the medical evidence of record and Dr. Kelly's report, agreed with the previous decision for light work capability. (R. at 359–66).

Based on all of the foregoing, the ALJ concluded that no new and material evidence alters the prior finding that the claimant has the residual functional capacity for light work. Accordingly, the decision to afford preclusive effect to the prior decision's residual functional capacity determination was supported by substantial evidence, and therefore

proper. Because the presumption of continuing nondisability was rebutted, the ALJ properly gave effect to certain findings in the prior decision, including the finding of the claimant's residual functional capacity for light work as of March 5, 2004.

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this matter.

DATED this 19th day of August, 2011.

*G. Murray Snow*
G. Murray Snow
United States District Judge